UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

MOHAMED MOHAMUD JIMALE,
Petitioner,
v.
JEREMY CASEY, et al.,
Respondents.

Case No.: 26cv5927-LL-SBC

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Before the Court is Petitioner Mohamed Mohamud Jimale's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. ECF No. 1. Respondents filed a Response [ECF No. 4]. For the reasons set forth below, the Court **GRANTS** the Petition and **ORDERS** an immediate release.

## I. BACKGROUND

Petitioner is a native and citizen of Somalia. Pet. 3. On November 9, 2024, Petitioner was arrested near the Calexico Port of Entry. ECF No. 4-1 at 2. On December 2, 2024, Petitioner was released on interim parole. *Id*. On March 11, 2025, Petitioner filed an application for asylum. *Id*. On July 13, 2026, Petitioner was arrested during a regular ICE check-in appointment. Pet. 4; ECF No. 4-1 at 2. On October 16, 2026, Petitioner filed the instant Petition alleging Respondents violated the Fifth Amendment's Due Process Clause

by revoking his parole without any written notice or meaningful opportunity to be heard. Pet. 9–27.

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and [] the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Hamdi*, 542 U.S. at 536 (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001)).

## III. DISCUSSION

Petitioner argues that the revocation of his parole without notice or pre-deprivation hearing violates the Fifth Amendment's Due Process Clause. Pet. 9–27. Respondents concede that Petitioner was "released from immigration custody on parole" and that "Respondents have insufficient information regarding termination of that parole." Ret. 2. Further, Respondents do not dispute Petitioner's claim that no notice or hearing was provided before revoking his parole *See generally* Ret.

The Due Process Clause of the Fifth Amendment guarantees that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. It is well established that due process rights apply to noncitizens, including those whose presence in the United States is unlawful. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). The Due Process Clause generally "requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

"[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected

liberty interest in remaining out of custody." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citations omitted). In fact, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[] to live up to the . . . conditions [of release].'" *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)) (alterations in original). An initial release from ICE custody further reflects "a determination by the government that [an individual is] neither a flight risk nor a danger to the community." *Pinchi*, 792 F. Supp. 3d at 1034. Thus, ICE may not re-arrest a previously released noncitizen "absent a change in circumstances." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *1 (N.D. Cal. Sept. 12, 2025) (citing *Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021)).

Here, Petitioner was previously released from immigration custody on parole in December 2024 (ECF No. 4-1 at 2) and thus held a protected liberty interest in remaining out of custody. Accordingly, the Due Process Clause required procedural protections before he could be deprived of that interest. *See Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976). To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court considers the following factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

The Court finds that all three factors support a finding that revocation of Petitioner's parole without notice or an opportunity to be heard violated Petitioner's due process rights. First, as discussed above, Petitioner has a significant liberty interest in remaining out of custody. *See Pinchi*, 792 F. Supp. 3d at 1032 ("Thus, even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of

custody." (citations omitted)). Freedom from detention is a fundamental part of due process protection. *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) ("[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992))).

Second, the risk of an erroneous deprivation of such interest is high as Petitioner's parole was revoked without providing him a reason for the revocation or giving him an opportunity to be heard. "Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). "Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk . . . ." *Id.* After initially finding that Petitioner was neither a flight risk nor a danger to the community, Respondents have not produced any valid argument or evidence that these findings have changed.

Moreover, Respondents also do not claim that Petitioner failed to abide by the conditions of his release. Thus, the risk of erroneous deprivation of Petitioner's liberty is high because neither the government nor Petitioner has had an opportunity to determine whether there is any valid basis for his detention. *Pinchi*, 792 F. Supp. 3d at 1035 (citation omitted). It follows that the probable value of additional procedural safeguards, such as notice and a pre-deprivation hearing, is also high.

Third, the government's interest in detaining Petitioner without notice, reasoning, and a hearing is low. *See Pinchi*, 792 F. Supp. 3d at 1036 ("[T]he government has articulated no legitimate interest that would support arresting [petitioner] without a pre-detention hearing."); *Alvarenga Matute v. Wofford*, No. 1:25-CV-01206-KES-SKO (HC), 2025 WL 2817795, at *6 (E.D. Cal. Oct. 3, 2025); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). There is no indication that providing proper notice, reasoning, and a pre-

deprivation hearing would be fiscally or administratively burdensome on the government. *See Pinchi*, 792 F. Supp. 3d at 1036 ("In immigration court, custody hearings are routine and impose a minimal cost." (quoting *Singh v. Andrews*, No. 1:25-CV-00801-KES-SKO (HC), 2025 WL 1918679, at *8 (E.D. Cal. July 11, 2025))).

Therefore, because Respondents detained Petitioner by revoking his release without notice or a pre-deprivation hearing in violation of the Due Process Clause, Petitioner's detention is unlawful. *See, e.g.*, *Sanchez v. LaRose*, No. 25-CV-2396-JES-MMP, 2025 WL 2770629, at *4 (S.D. Cal. Sept. 26, 2025) (granting a writ of habeas corpus and releasing petitioner from custody after finding the petitioner's parole was revoked without notice and a hearing, thereby violating her due process rights and rendering her detention unlawful).

As has been found in countless similar cases in this district, the appropriate remedy in such case is Petitioner's immediate release subject only to the conditions of his preexisting parole. *See Noori v. LaRose*, 807 F. Supp. 3d 1146, 1163–66 (S.D. Cal. 2025) (finding DHS violated the petitioner's due process rights by revoking his parole without notice or a hearing and ordering his immediate release); *Ortega*, 415 F. Supp. 3d at 970 (ordering immediate release after the petitioner was detained while out on bond without notice or pre-deprivation hearing). Accordingly, the Court **GRANTS** Petitioner's Petition.

## IV. CONCLUSION

For the reasons above, the Court **GRANTS** Petitioner's Petition for Writ of Habeas Corpus and **ORDERS** Respondents to immediately release Petitioner from custody subject only to the conditions of his preexisting parole. By **October 26, 2026** at **3:00 p.m.**, Respondents must submit a status report confirming Petitioner's release.

**IT IS SO ORDERED.**

Dated: October 23, 2026

Honorable Linda Lopez
United States District Judge